UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CV 10323**

| | |
|---|---|
| MEIRA RUBIN, Individually and On Behalf of All Others Similarly Situated, | ) <br> ) <br> ) **CIVIL ACTION NO.** |
| Plaintiff, | ) <br> ) |
| vs. | ) <br> ) **CLASS ACTION COMPLAINT** |
| FUWEI FILMS (HOLDINGS) CO., LTD., XIAOAN HE, LIN TANG, MARK E. STULGA, TONGJU ZHOU, DUO WANG, JUN YIN, MAXIM GROUP LLC, CHARDAN CAPITAL MARKETS, LLC, and WR HAMBRECHT & CO. LLC, | ) <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) |
| Defendants. | ) |

Plaintiff, for her complaint against the defendants, alleges the following upon personal knowledge as to herself and her own acts and upon information and belief based upon the investigation conducted by her attorneys as to all other matters:

## NATURE OF THE ACTION

1. This is a securities class action seeking redress under the strict liability provisions of the federal securities laws on behalf of all persons who purchased shares of Fuwei Films (Holdings) Co., Ltd. ("Fuwei" or the "Company") pursuant or traceable to the Registration Statement and Prospectus issued in connection with the Company's Initial Public Offering on or about December 19, 2006 ("IPO") and through November 12, 2007, against Fuwei and certain of its officers and directors including all those who signed the Registration Statement and Prospectus pursuant to the IPO.

2. The Registration Statement and Prospectus issued in connection with the IPO were materially false and misleading, and/or omitted material information necessary to make the statements made, in light of such material omissions, not materially false and misleading.

## JURISDICTION AND VENUE

3. The claims asserted herein arise under and pursuant to Sections 11, 12(2) and 15 of the Securities Act of 1933, as amended (the "Securities Act") [15 U.S.C. §§ 77k, 77*l* and 77o].

4. This Court has jurisdiction over the subject matter of this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. §77v(a).

5. Venue is proper in this Judicial District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a). Pursuant to 28 U.S.C. § 1391(d), Fuwei may be properly sued in any District in the United States, including the Southern District of New York. Moreover, Fuwei's common stock trades on the NASDAQ Global Market, which is located in this District. Thus, venue is proper in this District.

6. In addition, the Underwriter Defendants all maintain offices in this district.

7. In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

8. Plaintiff Meira Rubin, as set forth in the attached certification, purchased shares of Fuwei pursuant to the false and misleading Registration Statement and Prospectus.

9. Defendant Fuwei is a Cayman Islands Corporation with its principal place of business in the People's Republic of China. Fuwei, through its wholly owned subsidiary, develops, manufactures, and distributes plastic films using the biaxial oriented stretch technique. The Company's products include printing base film, stamping foil base film, metallization film or aluminum plating base film, laser holographic base film, single/double surface matte film, anti-counterfeit film, chemical pretreated film, and high-gloss film. Its films are used in consumer-based packaging, such as food, pharmaceutical, cosmetics, tobacco, and alcohol industries; imaging, such as masking film, printing plates, and microfilms; electronics and electrical industries, such as wire and cable wrap, capacitors and motor insulation; and in magnetic products, such as audio and video tapes.

10. Fuwei's common stock trades on the NASDAQ Global Market under the ticker symbol "FFHL."

11. Defendant Xiaoan He ("He") was at all relevant times herein the Company's Chairman and Chief Executive Officer and in such capacity signed the Registration Statement.

12. Defendant Lin Tang ("Tang") was at all relevant times herein the Company's Chief Financial Officer and a Director and in such capacity signed the Registration Statement.

13. Defendant Mark E. Stulga ("Stulga") was at all relevant times herein a Director of the Company as well as its Authorized Representative in the United States and in such capacity signed the Registration Statement.

14. Defendant Tongju Zhou ("Zhou") was at all relevant times herein a Director of the Company and in such capacity signed the Registration Statement. Zhou was also a co-owner of

15% of the Company at the time of the Company's IPO and currently co-owns approximately 12.5% of the Company.

15. Defendant Duo Wang ("Wang") was co-owner of 15% of the Company together with Zhou at the time of the IPO and currently co-owns approximately 12.5% of the Company. Wang, through his ownership and control of the Company, was a controlling person of Fuwei within the meaning of the Securities Act.

16. Defendant Jun Yin ("Yin") was a 55% owner of the Company at the time of the Company's IPO and currently owns approximately 52.9% of the Company. Yin, through his ownership and control of the Company, was a controlling person of Fuwei within the meaning of the Securities Act.

17. He, Tang, Stulga, Zhou, Wang and Yin are collectively referred to hereinafter as the "Individual Defendants."

18. Defendant Maxim Group LLC ("Maxim"), acted as an underwriter for the IPO and as Sole Book Runner.

19. Defendant WR Hambrecht & Co. LLC ("WR Hambrecht"), acted as an underwriter for the IPO.

20. Defendant Chardan Capital Markets, LLC ("Chardan"), acted as an underwriter for the IPO.

21. Maxim, WR Hambrecht and Chardan are collectively referred to hereinafter as the "Underwriter Defendants."

## FALSE AND MISLEADING STATEMENTS AND OMISSIONS

22.     On December 19, 2006, Fuwei went public via its global IPO of 4,312,500 shares (including the over-allotment option of up to 562,500 shares) for gross proceeds of approximately $35,707,500. Prior to the IPO, no public market existed for trading of the Company's securities.

23.     Unbeknownst to investors, however, the Registration Statement and Prospectus issued in connection with the IPO were materially false and misleading because, among other things, they contained representations that the Company's purchase of its main operating assets at two public auctions in October 2003 and December 2004 were legal and valid, while in truth the method and manner of the December 2004 purchase not only violated Chinese laws and/or regulations, but were actually criminal in nature, as demonstrated below.

24.     With respect to the October 2003 acquisition, the Prospectus and Registration Statement represented that the Company's Brückner production line fixed assets were acquired from Shandong Neo-Luck (hereinafter "Neo-Luck" or Neoluck"), a now bankrupt Chinese company, whose management executives were Defendants Yin, Wang and Zhou:

> Shandong Fuwei, our PRC operating subsidiary, was formed on January 28, 2003, as a sino-foreign equity joint venture under the name Weifang Fuwei Plastic Co., Ltd. In July 2003, this company began production of BOPET film, initially renting the necessary fixed assets from Shandong Neo-Luck, a company involved in BOPET film production for which Mr. Xiaoming Wang and Dr. Yongping Bai, our current executive officers, each served as executive officers at the time.
>
> Shandong Fuwei subsequently acquired these fixed assets through two auction proceedings, the first in October of 2003 and the second in December 2004. At the first auction proceeding in October 2003, Shandong Fuwei acquired assets related to the Brückner production line that it had been renting from Shandong Neo-Luck. This line had been previously mortgaged by Shandong Neo-Luck to the Bank of China, Weifang city branch as security for several loans extended to Shandong

Neo-Luck's affiliates. When these loans went into default, the Bank of China brought a series of legal actions in Weifang Municipal People's Court that resulted in the assets securing the loans being sold at public auction. Following its successful bid at auction, on October 9, 2003, Shandong Fuwei acquired the Brückner production line (with an appraised value of approximately RMB 169 million) for RMB 156 million.

25.   With respect to the December 2004 acquisition, the Prospectus and Registration Statement represented that the Company's other fixed asset, the DMT production line, which had been Neo-Luck's major asset and had been pledged to Weifang City Commercial Bank, was acquired by Fuwei under the following circumstances:

> When Shandong Neo-Luck was declared bankrupt, the Shandong Branch of the Bank of China seized the [DMT] production line [on September 24, 2004] by order of the Qingdao Intermediate People's Court and the Qingdao Southern District People's Court while the Weifang Branch of Bank of Communications did so [seizing the same assets] through Weifang Intermediate People's Court. As such, the effectiveness of the pledge in favor of Weifang City Commercial Bank was under dispute. Subsequently, pursuant to the decision from Weifang Intermediate People's Court, Weifang City Commercial Bank ranked senior in terms of the right of claims.
>
> The pledged DMT production was put up for public auction by the Shandong Neo-Luck liquidation committee on October 22, 2004. In view of the above complexities, the auction was deemed to be tremendously risky at that time, and therefore, our PRC operating subsidiary did not directly participate in the first auction, which began with a bid price of approximately RMB 53 million by reference to an independent valuation performed on a forced sale basis. However, due to the potential tremendous risk involved, the auction had been withdrawn twice and the starting bid price had been further reduced to approximately RMB 34 million and was finally purchased by Beijing Baorui, a company indirectly controlled by Shandong Baorui. When the DMT production line was put for public auction by Beijing Baorui three months later, our PRC operating subsidiary purchased it for approximately RMB 119 million, which was supported by an independent valuation performed on a going concern basis. We considered the arrangement to have the DMT production line acquired through Beijing Baorui through the first auction as an effective way to minimize the risk associated with the uncertainties arising from the bankruptcy of Shandong Neo-Luck. The price difference of approximately RMB 85 million represented a risk premium paid to

Beijing Baorui, which bore the ultimate risks of recourse from creditors of Shandong Neo-Luck.

26. The foregoing representations were materially false and misleading because the Prospectus and Registration Statement did not disclose that there was bid rigging going on in connection with the purchase of the DMT production line, that the purchase of the DMT production line was not made at arms-length and, to the contrary, was the result of criminal acts that could result in the conviction of one of the Company's directors and two of the Company's largest shareholders as well as the seizing of the illegitimately purchased equipment. Specifically, the Prospectus and Registration Statement failed to:

    a. provide complete disclosure as to the circumstances surrounding the Company's acquisition of the DMT production line which render the statements made in the Prospectus materially false and misleading; and

    b. reveal that Beijing Baorui, the company that first purchased the DMT production line, was controlled by Defendants Yin and Wang, and that they manipulated the purchase of the DMT production line at a steeply discounted price, so that they could turn around and sell it to another company they controlled and owned, Fuwei, through a mock auction at a substantially elevated price.

## THE TRUTH STARTS TO COME OUT

27. On June 25, 2007, prior to the opening of the New York financial markets, Fuwei shocked the market when it announced that Defendants Yin, Wang and Zhou were being investigated in China by the Chinese authorities. The press release falsely represented the

investigation as being "a result of the ongoing financial dispute between Neo-Luck and **a certain Chinese asset management company**." The press release misleadingly intimated that Fuwei's only connection to the investigation was the fact that some of its largest shareholders happened to be the targets of that investigation. It did not explain that the "certain Chinese asset management company" was actually a former parent company of Fuwei. Specifically, the press release stated in pertinent part:

> Fuwei Films Discusses Proceedings Related to Three of Its Stockholders
>
> BEIJING, June 25 /Xinhua-PRNewswire-FirstCall/ – Fuwei Films (Holdings) Co., Ltd. (Nasdaq: FFHL - News; "Fuwei Films") today stated that it had become aware of reports that Mr. Jun Yin, Mr. Duo Wang, and Mr. Tongju Zhou are involved in an investigation conducted by the Chinese Communist Party that began in May and mid-June 2007. Mr. Jun Yin is a 53% shareholder of Fuwei Films and Mr. Tongju Zhou, a director of Fuwei Films, together with Mr. Duo Wang, indirectly own 14% of Fuwei Films. None of these individuals are involved in Fuwei Films' day-to-day operations.
>
> Upon Fuwei Films' receipt of what it deems to be credible, accurate and verifiable information relating to such investigation, it will promptly notify the public thereof. Unofficial sources have reported that the inquiry relating to these three individuals is as a result of the ongoing financial dispute between Weifang Neoluck Group ("Neoluck") and a certain Chinese asset management company. Messrs. Yin, Zhou and Wang are the former management executives of Neoluck. Although Fuwei purchased certain equipment formally owned by Neoluck through a public auction, Neoluck does not have any current relationship with Fuwei Films.

28. The June 25, 2007 announcement stinted the Company's stock price fall of over 14% or $1.01 per share, from the previous trading day.

## THE TRUTH IS REVEALED

29. On October 16, 2007, Fuwei shocked the market when it issued a press release prior to the opening of the New York financial markets. In updating the markets on the status of

the legal proceedings against Yin, Wang and Zhou, the Company disclosed that an arrest warrant had been issued for Yin, Wang and Zhou two weeks prior, on September 28, 2007. They were charged with crimes of "irregularities for favoritism and to sell state-owned assets at low prices." The press release reported that "[a]t this time, there has not been any judicial or formal official notification to Fuwei Films that the investigation or charges involving the three shareholders relates to the purchase by Fuwei Films of state-owned equipment that is used in connection with its business."

30. This disclosure caused the Company's stock to drop sharply, over 23.5% or $2.25 per share, from the previous day's trading.

31. In addition, as a result of the investigation and arrest of the three significant Company shareholders, the Company's independent accountant, Murrell, Hall, McIntosh & Co. PLLP, resigned its position effective November 1, 2007.

32. Also, Defendants Zhou and Stulga both resigned from the Board of Directors, effective October 18, 2007.

33. As a result of the director resignations, the Company is on track to be delisted from the NASDAQ. On November 2, 2007, the Company announced it had received a NASDAQ Staff Deficiency Letter stating that the Company was not in compliance with the Nasdaq Marketplace Rules 4350(a)(5) requiring a majority of independent directors on the Audit Committee.

34. The Company's shares plummeted once again on Monday, November 12, 2007 after the Company announced prior to the opening of the New York financial markets, that the implementation of a planned Third Production Line was to be delayed as a result of "a capital

shortfall." The Company's attempt to secure financing was being complicated because of a "limited response from commercial banking lenders because of the shareholder investigation." As a result, Fuwei has been looking for financing opportunities from funds in the United States but has yet to secure financing. Moreover, in response to a question during the earnings conference call on November 12, 2007, Fuwei's management was unable to give any guidance on when -- and if -- financing would be secured.

35.     This disclosure caused the Company's stock to once again drop precipitously to close at $3.71 per share, a drop of 21% down approximately 56% from its IPO. The stock declined further to trade just above $3.00 per share on the next day, November 13, 2007.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of herself and a class consisting of all persons who purchased shares of Fuwei common stock pursuant to the Registration Statement and Prospectus issued in connection with Fuwei's IPO through October 16, 2007 (the "Class" and the "Class Period" respectively). Excluded from the Class are defendants herein, members of the immediate family of each of the defendants, any person, firm trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

37.     The members of the Class are so numerous that joinder of all members is impracticable. Over 4.3 million Company shares of common stock were sold to members of the investing public in the IPO. The precise number of class members is unknown to plaintiff at this

time but is believed to number at least in the hundreds. In addition, the names and addresses of the class members can be ascertained from the books and records of Fuwei, its transfer agents or the underwriters for the IPO.

38. The members of the Class are so numerous that joinder of all members is impracticable.

39. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to prosecute this action vigorously.

40. Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff and all the class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants. Plaintiff does not have interests antagonistic to, or in conflict with, the Class.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) Whether the Registration Statement and Prospectus omitted and/or misrepresented material information about Fuwei and its finances, business and assets;

(b) Whether defendants violated the Securities Act in connection with the offering and sale of Fuwei securities;

(c) Whether the Individual Defendants and Underwriter Defendants are controlling persons of Fuwei within the meaning of § 15 of the Securities Act;

(d) Whether the Individual Defendants and Underwriter Defendants exercised due diligence in connection with the IPO;

(e) Whether the market price of the Company's securities was artificially inflated due to the material misrepresentations and/or nondisclosures complained of herein; and

(f) The extent of injuries sustained by members of the Class and the appropriate measure of damages.

## COUNT I

### Against Fuwei And Each Of The Individual Defendants

### (Section 11)

45. Plaintiff repeats and realleges each and every allegation contained above.

46. This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Fuwei and the Individual Defendants.

47. The defendants issued, caused to be issued, participated in the issuance of and/or signed the Registration Statement and Prospectus and offered, sold, and/or solicited for financial gain the common stock sold in the IPO to plaintiff and the Class.

12

48. The Registration Statement and Prospectus for the IPO were inaccurate and misleading, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading in the context in which they were made.

49. The Individual Defendants signed, either personally or through an attorney-in-fact, the Registration Statement and Prospectus and also served as senior executives and/or directors of the Company at the time of the IPO and as such were responsible for the contents and dissemination of the Registration Statement and Prospectus.

50. The Individual Defendants failed to conduct reasonable investigation or possess reasonable grounds for believing that the statements contained in the Registration Statement and Prospectus were true, did not omit any material facts and were not materially misleading. Had any of the material facts which were omitted, been disclosed, it would have been impossible to successfully complete the IPO.

51. Defendants issued, caused to be issued and participated in the issuance of materially false and misleading statements to the investing public which were contained in the Registration Statement and Prospectus, which misrepresented or failed to disclose, among other things, the facts set forth above. By reason of the conduct herein alleged, each defendant violated Section 11 of the Securities Act.

52. Plaintiff and the Class acquired Fuwei shares issued pursuant to, or traceable to, the Registration Statement and Prospectus.

53. Plaintiff and the Class have sustained damages. The value of Fuwei shares has declined dramatically subsequent to the IPO and due to defendants' violations.

54. At the time they purchased Fuwei shares, members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not, in the exercise of reasonable diligence, have discovered those facts at that time. Less than one year elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that plaintiff filed her Complaint. Less than three years elapsed from the time that the securities upon which this Count is brought were bona fide offered to the public to the time plaintiff filed her Complaint.

## COUNT II

### Against Each Of The Defendants

### (Section 12(2))

55. Plaintiff repeats and realleges each and every allegation contained above.

56. This Count is being asserted under and pursuant to Section 12(2) of the Securities Act, 15 U.S.C. § 77*l*, on behalf of the Class, against all defendants.

57. The defendants offered, sold, or solicited for financial gain the securities sold in the IPO to the Class.

58. The Registration Statement and Prospectus included untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. The defendants' actions of solicitation included, *inter alia* participating in the preparation of the false and misleading Registration Statement and Prospectus.

59. The defendants owed to the purchasers of Fuwei common stock the duty to make a reasonable and diligent investigation of the statements contained in the Registration Statement

and Prospectus, to insure that such statements were true and that there was no omission to state a material fact required to be stated in order to make the statements contained therein not misleading.

60.  Class members did not know of any of the untruthful statements and omissions alleged and in the exercise of reasonable care could not have known of them.

61.  By reason of the conduct alleged herein, defendants violated §12(2) of the Securities Act. As a direct and proximate result of the defendants' wrongful conduct, purchasers of Fuwei securities suffered substantial damage in connection with the purchase thereof.

62.  This action is commenced within three years of the IPO and within one year of the time plaintiff and the other Class member purchasers of the securities discovered or could have discovered the existence of untrue statements by exercising due diligence.

63.  By reason of the foregoing, the defendants have violated §12(2) of the Securities Act.

64.  Purchasers of Fuwei securities pursuant to the IPO hereby tender their securities to the defendants and seek rescission of their purchases to the extent that they continue to own such securities.

## COUNT III

### Against Each Of The Individual Defendants And Underwriter Defendants

### (Section 15)

65.  Plaintiff repeats and realleges each and every allegation contained above.

66.  This Count is asserted against the Individual Defendants and Underwriter Defendants under and pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o. By reason of

15

their ownership, senior management positions and/or directorships as alleged above, these defendants had the power to influence and exercised the same to cause Fuwei to engage in the unlawful acts and conduct complained of herein.

67. By reason of such wrongful conduct, the Individual Defendants and Underwriter Defendants are liable pursuant to Section 15 of the Securities Act. As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's securities.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff, on behalf of herself and the Class, prays for judgment as follows:

A. declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23(a) and (b) (3) of the Federal Rules of Civil Procedure;

B. appointing plaintiff as lead plaintiff and class representative and her counsel as lead class counsel;

C. awarding plaintiff and other members of the Class damages together with pre-judgment interest thereon;

D. awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

E. awarding plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  November 14, 2007
        New York, New York

                                    **WEISS & LURIE**

                                    */s/ Joseph H. Weiss*
                                    Joseph H. Weiss (JW-4534)
                                    Mark D. Smilow (MS-2809)
                                    Jack I. Zwick (JZ-2514)
                                    551 Fifth Avenue
                                    New York, New York  10176
                                    (212) 682-3025

                                    STULL, STULL & BRODY
                                    Jules Brody (JB-9151)
                                    6 East 45th Street
                                    New York, New York 10017
                                    (212) 687-7230

                                    Attorneys for Plaintiff

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

MEIRA RUBIN ("Plaintiff") certifies as follows:

1. I have reviewed a draft complaint against Fuwei Films (Holdings) Co., Ltd. and others and authorize its filing.

2. I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3. I am willing to serve as the representative party, including providing testimony at deposition and trial, if necessary.

4. On December 19, 2006, I purchased 1,500 shares of Fuwei Films (Holdings) Co., Ltd. in the IPO at a price of $8.28. I still retain all the shares of Fuwei Films (Holdings) Co., Ltd.

5. I have not sought to serve as the representative party in any federal securities case in the last three years.

6. I will not accept any payment for serving as the representative party beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

7. I hereby certify, under penalty of perjury, that the foregoing is true and correct to the best of my current knowledge, information and belief.

DATED:     November 12, 2007

_____
Meira Rubin