**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

YINGLU YAO, Individually And On Behalf Of All )
Others Similarly Situated, )
    )
                Plaintiff, )
    ) Case No. 07 Civ 9416 (RJS)
        vs. )
    )
FUWEI FILMS (HOLDINGS) CO., LTD., )
XIAOAN HE, JUN YIN, DUO WANG, TONGJU )
ZHOU, )
    )
              Defendants. )
_____ )

_____

MEIRA RUBIN, Individually and On Behalf of All )
Others Similarly Situated, )
    )
                Plaintiff, )
    ) Case No. 07 Civ 10323 (RJS)
        vs. )
    )
FUWEI FILMS (HOLDINGS) CO., LTD., )
XIAOAN HE, LIN TANG, MARK E. STULGA, )
TONGJU ZHOU, DUO WANG, JUN YIN, )
MAXIM GROUP LLC,  CHARDAN CAPITAL )
MARKETS, LLC, and WR HAMBRECHT & CO. )
LLC, )
    )
              Defendants. )
_____ )

### DECLARATION OF JOSEPH H. WEISS IN SUPPORT OF MOTION OF PROPOSED LEAD PLAINTIFFS MEIRA RUBIN AND COSTACHI LERU FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF THEIR SELECTION OF LEAD COUNSEL

JOSEPH H. WEISS, declares as follows:

1.      I am admitted to practice in New York and am a partner with the law firm of

Weiss & Lurie, counsel for Meira Rubin and Costachi Leru, proposed Lead Plaintiffs herein.  I

submit this declaration in support of Proposed Lead Plaintiffs Meira Rubin and Costachi Leru's

Motion for Consolidation, Appointment as Lead Plaintiffs and Approval of their Selection of

Lead Counsel.

2.      Attached hereto as Exhibit A is a copy of the notice published over MarketWire

on October 19, 2007.

3.      Attached hereto as Exhibit B are loss charts estimating the damages suffered by

Meira Rubin and Costachi Leru as a result of purchases of Fuwei securities during the Class

Period.

3.      Attached hereto as Exhibit C are the certifications of Meira Rubin and Costachi

Leru.

4.      Attached hereto as Exhibit D is a true and accurate copy of the firm biography of

Weiss & Lurie.

5.      Attached hereto as Exhibit E is a true and accurate copy of the Complaint filed in

the Rubin action.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct.

Executed this 18th day of December, 2007, at New York, New York.

s/ Joseph H. Weiss
JOSEPH H. WEISS

2

# EXHIBIT A



Yahoo!  My Yahoo!  Mail    Make Y! your home page        Search:                          Web Search

**YAHOO!** FINANCE    **Sign In**      Finance Home - Help
                      New User? Sign Up



**Welcome [Sign In]**                              To track stocks & more, Register

## Financial News

Enter symbol(s)            Basic        ▼  Get   Symbol Lookup

Press Release                                    Source: The Rosen Law Firm P.A.

# The Rosen Law Firm Files Securities Class Action Charging Fuwei Films (Holdings) Co., Ltd. With Violations of the Federal Securities Laws -- FFHL

Friday October 19, 8:45 pm ET

NEW YORK, NY--(MARKET WIRE)--Oct 19, 2007 -- The Rosen Law Firm today announced that it has filed a class action lawsuit on behalf of all purchasers of Fuwei Films (Holdings) Co., Ltd. ("FFHL" or the "Company") (NasdaqGM:FFHL - News) stock from the date of the Company's Initial Public Offering (the "IPO") on December 19, 2006 through October 16, 2007 (the "Class Period").

To join the FFHL class action, go to the website at http://www.rosenlegal.com or call Laurence Rosen, Esq. or Phillip Kim, Esq. toll-free at 866-767-3653 or email lrosen@rosenlegal.com or pkim@rosenlegal.com for information on the class action.

The case is pending in the United States District Court for the Southern District of New York as case no. 07-CV-9416. You can obtain a copy of the complaint from the clerk of court or you may contact counsel for plaintiffs Laurence Rosen, Esq. or Phillip Kim, Esq. toll-free at 866-767-3653 or email lrosen@rosenlegal.com or pkim@rosenlegal.com.

NO CLASS HAS YET BEEN CERTIFIED IN THE ABOVE ACTION. UNTIL A CLASS IS CERTIFIED, YOU ARE NOT REPRESENTED BY COUNSEL UNLESS YOU RETAIN ONE. YOU MAY ALSO REMAIN AN ABSENT CLASS MEMBER.

The complaint charges that FFHL and certain of its present and former officers, directors, and control persons violated Sections 11 and 15 of the Securities Act of 1933 by issuing a false and misleading Registration Statement and Prospectus (collectively the "Registration Statement") in connection with the Company's IPO.

According to the Complaint, on December 19, 2006 the Company commenced its IPO priced at $8.28 per share for 3,750,000 shares of Company stock. On December 22, 2006 FFHL announced the closing of its IPO and reported gross proceeds, including over-allotments, of approximately $35.6 million. The Complaint asserts that FFHL's Registration Statement was false and misleading because the Company: (i) failed to reveal that its main operating assets were obtained through transactions that may not have been valid under Chinese law; (ii) failed to provide complete disclosures as to the circumstances of the Company's acquisition of its main operating assets; and (iii) inaccurately stated that the likelihood of any action or recourse in connection with the Company's acquisition of its main operating assets was remote.

The Complaint further alleges that on June 25, 2007 the Company announced that three of the Company's major shareholders, one of whom is a Company director, were under investigation. On October 16, 2007 the Company announced that authorities in China had issued arrest notices for the same three individuals on suspicion of violations of Chinese laws and regulations. The Complaint asserts that these charges related to the Company's acquisition of its main operating assets. As a result of these adverse disclosures, FFHL's stock price dropped, damaging investors.

A class action lawsuit has already been filed on behalf of FFHL shareholders. If you wish to serve as lead plaintiff, you must move the Court no later than December 18, 2007. If you wish to join the litigation or to discuss your rights or interests regarding this class action, please contact plaintiff's counsel, Laurence Rosen, Esq. or Phillip Kim, Esq. of The Rosen Law Firm toll free at 866-767-3653 or via e-mail at lrosen@rosenlegal.com or pkim@rosenlegal.com.

The Rosen Law Firm has expertise in prosecuting investor securities litigation and extensive experience in actions

involving financial fraud. The Rosen Law Firm represents investors throughout the nation, concentrating its practice in securities class actions.

*Contact:*

    Contact:
    Laurence Rosen, Esq.
    Phillip Kim, Esq.
    The Rosen Law Firm P.A.
    Tel:  (212) 686-1060
    Weekends Tel: (917) 797-4425
    Toll Free: 1-866-767-3653
    Fax: (212) 202-3827
    Email Contact
    Email Contact
    http://www.rosenlegal.com


Source: The Rosen Law Firm P.A.

Copyright © 2007 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback
Copyright © 2007 Marketwire. All rights reserved. All the news releases provided by Marketwire are copyrighted. Any forms of copying other than an individual user's personal reference without express written permission is prohibited. Further distribution of these materials is strictly forbidden, including but not limited to, posting, emailing, faxing, archiving in a public database, redistributing via a computer network or in a printed form.

# EXHIBIT B

# Fuwei Films (Holdings) Co., Ltd.
Movants Register and Transaction Report

| Proposed Lead Plaintiff | Date of Purchase | Number of Shares | Price Per Share | Cost Per Transaction | Date of Sale | Number of Shares Sold | Price of Sale | Gross Receipts | Gains (Losses) |
|---|---|---|---|---|---|---|---|---|---|
| Leru, Costachi | 11/7/2007 | 30,000 | $ 5.15 | $ 154,350.00 | 11/15/2007 | 30,000 | $ 2.72 | $ 81,450.00 | $ (72,900.00) |
| Rubin, Meira | 12/19/2006 | 500 | $ 8.28 | $ 4,140.00 | 12/6/2007 | 500 | $ 7.50 | $ 3,750.00 | $ (4,402.10) |
|  | 12/19/2006 | 1,000 | $ 8.28 | 8,280.00 |  |  |  |  |  |
|  |  | 1,500 | $ 8.28 | 12,420.00 |  | 500 |  | $ 3,750.00 | $ (4,402.10) |
| **TOTALS:** |  | **31,500** |  | **$ 166,770.00** |  | **30,500** |  | **$ 82,200.00** | **$ (77,302.10)** |

**Explanatory notes**

The total estimated damages of each Proposed Lead Plaintiff has been calculated in the following manner:

1) Common stock sold within the Class Period:
   Damages with respect to shares sold within the Class Period have been based upon each proposed lead plaintiff's actual loss. Each Proposed Lead Plaintiff's actual loss has been offset by any gain realized by plaintiff as a result of sales made within the Class Period.

2) Common stock still held:
   Purchase price of Fuwei Films (Holdings) Co., Ltd. common stock still held minus the mean trading price of Fuwei Films (Holdings) Co., Ltd. common stock between 11/13/2007 and 12/17/2007 ($4.2679) multiplied by the number of shares held.

3) Common stock sold after the Class Period:
   For shareholders who sold their shares after the end of the Class Period, their actual (non statutory) losses were calculated.

4) All calculations have been performed using the First-In-First-Out ("FIFO") method of matching trades.

5) All losses have been calculated exclusive of costs, commissions and fees.

# EXHIBIT C

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

MEIRA RUBIN ("Plaintiff") certifies as follows:

1.    I have reviewed a draft complaint against Fuwei Films (Holdings) Co., Ltd. and others and authorize its filing.

2.    I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3.    I am willing to serve as the representative party, including providing testimony at deposition and trial, if necessary.

4.    On December 19, 2006, I purchased 1,500 shares of Fuwei Films (Holdings) Co., Ltd. in the IPO at a price of $8.28.  I still retain all the shares of Fuwei Films (Holdings) Co., Ltd.

5.    I have not sought to serve as the representative party in any federal securities case in the last three years.

6.    I will not accept any payment for serving as the representative party beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

7.    I hereby certify, under penalty of perjury, that the foregoing is true and correct to the best of my current knowledge, information and belief.

DATED:      November 12, 2007

_____
Meira Rubin

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, Costachi Leru, hereby certify that the following is true and correct to the best of my current knowledge, information and belief:

1.    I have reviewed the complaint styled <u>Rubin v. Fuwei Films (Holdings) Co., Ltd., et al.,</u> 07-10323, U.S.D.C., Southern District of New York, which was filed on behalf of all others similarly situated.  If necessary, I authorize the filing of a similar complaint on my behalf.

2.    I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3.    I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.  I understand that the litigation is not settled, this is not a claim form, and sharing in any recovery is not dependent upon execution of this Certification.

4.    To the best of my current knowledge, the following are all my transactions in Fuwei Films (Holdings) Co., Ltd. securities during the period from the Initial Public Offering on or about December 19, 2006 and through November 12, 2007:

| Date | Purchased or Sold | No. of Shares | Price per Share |
|------|-------------------|---------------|-----------------|
| Purchased 11/07/07 | | 30,000 | 5.145 |
| Sold on 11/15/07 | | 30,000 | 2.725 |

5.    During the last three years, I have not served or sought to serve as a class representative in any case brought under the federal securities laws.

6.    I have not been promised any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

Signed under penalty of perjury this _26_ day of _november_, 2007.

_Costachi Leru_
Costachi Leru

# EXHIBIT D

# WEISS & LURIE

The Fred French Building
551 Fifth Avenue
New York, New York 10176
TEL. (212) 682-3025
FAX (212) 682-3010

New York . Los Angeles

## FIRM BIOGRAPHY

The law firm of Weiss & Lurie has offices in New York City and Los Angeles. In courts throughout the United States, the firm has litigated hundreds of stockholder class actions brought for violations of federal securities laws and shareholder class and derivative actions brought for violations of corporate and fiduciary duties. The firm also represents consumers in several class actions in the area of consumer fraud and unfair practices. The firm has served as lead counsel in numerous actions on behalf of defrauded institutions and individuals for whom it has recovered well over a billion dollars.

Numerous courts have commended the firm for its expertise and ability:

In Brody v. U.S. West, et al., No. CV-4142 (D. Colo.), Judge Coughlin observed that the case "was litigated by extremely talented lawyers" and "it took a great deal of skill to get to the point of trial." Referring to the firm, Judge Coughlin stated "there wasn't any other lawyers in the United States that took the gamble that these people did. Not one other firm anywhere said, 'I am willing to take that on'...[the shareholders are] fortunate that they had some lawyers that had the guts to come forward and do it...I had the opportunity to watch these attorneys throughout this period of time when I had this case and the [lawyers'] ability is terrific."

In In re McLeodUSA Inc. Securities Litigation, No. C02-0001-MWB (N.D. Iowa), Chief Judge Mark Bennett stated at the final approval hearing: "I thought you all did a great job in this litigation" and "I think very highly of the work that all the lawyers did in the case, and [I am] pleased that you were able to get it resolved."

WEISS & LURIE

In <u>Ellison v. American Image Motor, et al.</u>, Civil Action No. 97-3608 (S.D.N.Y.), Judge Chin, approving the settlement and fee application, commented that "It has been many years. The case was hard fought, very capable counsel on both sides, and I saw counsel many times. It was a hard fought case. It was a difficult case."... "It's probably not said very often, but in this case I think plaintiffs' counsel are being under paid." ... "Counsel did a great job..."

In <u>In re United Telecommunications, Inc. Securities Litigation</u>, No. 90-2251-0 (D. Kan.), Judge O'Conner stated "the court finds that plaintiffs' counsel were experienced and qualified attorneys with outstanding professional reputations in securities litigation who ably and zealously prosecuted the instant case on behalf of the class."

In <u>In re VeriFone Inc. Securities Litigation</u>, No. C-93-3640 DCJ (N.D. Cal.), Judge Jensen stated "I think the case was handled extremely well, extremely professionally, so I think you've done very well."

In <u>In re Western Digital Securities Litigation</u>, SACV 91-375(A) GLT (RWRx) (C.D. Cal.), Judge Taylor complimented plaintiffs' attorneys' work in the action, specifically noting "the caliber of the work involved [and] the quality of the attorneys involved."

In <u>Georgallas v. Martin Color-Fi, Inc.</u> Civil Action No. 6:95-06483 (D.S.C.), Judge Anderson expressed "the utmost respect" for the work of the firm.

In <u>Bash v. Diagnostek</u>, CV 94-794 M (D.N.M.), Judge Black said the case provided "a model for how commercial litigation should be conducted and can be resolved."

In <u>In re National Medical Enterprises Litigation</u>, CV 93-5223-TJH and CV 93-5313-TJH (C.D. Cal.), Judge Hatter summed up the settlement hearing by saying, "I want to again thank counsel for the work that you put into this and hopefully it's a settlement for which the claimants themselves will be appreciative of the results."

2

WEISS & LURIE

In <u>In re Santa Fe Southern Pacific Corporation</u>, Consold. Civ. No. 9523 (Del. Ch.), Chancellor

Allen of the Delaware Chancery Court approved a settlement and cited the creativity and sophistication

of plaintiffs' counsel.

Some of the actions which highlight the firm's accomplishments are:

## CASES IN WHICH WEISS & LURIE WAS LEAD OR CO-LEAD COUNSEL

<u>Jordan v. California Department of Motor Vehicles</u> (Sacramento Cal.): The California Court of Appeal, Third Appellate District, held that the State of California's $300 smog impact fee was unconstitutional, paving the way for the creation of a $665 million fund and full refunds, with interest, to 1.7 million motorists.

<u>In re Geodyne Resources, Inc. Securities Litigation</u> (Harris Cty. Tex.): A recovery (including related litigation) totaling over $200 million was obtained for the class.

<u>Freddie Mac Derivative Litigation</u> (S.D.N.Y.): Approximately $100 million was recovered for the Company and significant corporate governance measures were adopted.

<u>Brody v. U.S. West, et al.,</u> (D. Colo.): A recovery of $50 million was obtained for the class.

<u>In re Tenneco Securities Litigation</u> (D. Tex.): A recovery of $50 million was obtained for the class.

<u>In re Community Psychiatric Center Securities Litigation</u> (C.D. Cal.): A recovery of $42.5 million was obtained for the class.

<u>In re Crazy Eddie Securities Litigation</u> (S.D.N.Y.): A recovery of $42 million was obtained for the class.

<u>In re Apria Healthcare Group Securities Litigation</u> (Orange County Cal.): A recovery of $42 million was obtained for the class.

<u>In re Canon Group Securities Litigation</u> (C.D. Cal.): A recovery of $33 million was obtained for the class.

<u>In re Platinum Software Securities Litigation</u> (C.D. Cal.): A recovery of $32 million was obtained for the class.

<u>In re McLeodUSA Inc. Securities Litigation</u>, (N.D. Iowa): A recovery of $30 million was obtained for the class.

<u>In re United Telecommunications Securities Litigation</u> (D. Kan.): A recovery of $28 million was obtained for the class.

<u>In re Bergen Brunswig Corp. Sec. Litig.,</u> (C.D. Cal.): A recovery of $27.9 million was obtained for the class.

WEISS & LURIE

In re Bank of New York Derivative Litigation (Sup. Ct. NY): A recovery of $26.5 million was obtained for the Company and significant corporate governance measures were adopted.

In re FirstEnergy Shareholder Derivative Litigation (N.D. Ohio): A recovery of $25 million was obtained for the Company and significant corporate governance measures were adopted.

In re Vodafone Group, PLC Securities Litigation (S.D.N.Y.): A recovery of $24.5 million was obtained for the class.

In re Abbey Healthcare Securities Litigation (C.D. Cal.): A recovery of $20.5 million was obtained for the class.

Feinberg v. Hibernia Corp. (D. La.): A recovery of $20 million was obtained for the class.

In re Southern Pacific Funding Corp. Sec. Litig., (D. Or.): A recovery of $19.5 million was obtained for the class.

In re Aura Systems, Inc. Securities Litigation (C.D. Cal.): A recovery of $18 million was obtained for the class.

In re MK Rail Securities Litigation (D. Idaho):  A recovery of $14.65 million was obtained for the class.

In re California Microwave Securities Litigation (N.D. Cal.): A recovery of $14 million was obtained for the class.

In re KeySpan Corporation Securities Litigation (E.D.N.Y.): A recovery of $13.75 million was obtained for the class.

In re Elscint Ltd Securities Litigation (D. Mass.): A recovery of $12 million was obtained for the class.

Bash v. Diagnostek (D.N.M.): A recovery of $11.7 million was obtained for the class.

In re Megafoods Securities Litigation (D. Ariz.): A recovery of $12 million was obtained for the class.

In re GTECH Securities Litigation (D.R.I.): A recovery of $10.25 million was obtained for the class.

In re Complete Management, Inc. Securities Litigation (S.D.N.Y.): A recovery of $10.15 million was obtained for the class.

Berlinsky v. Alcatel (S.D.N.Y.): A recovery of $8.8 million was obtained for the class.

Lopez v. Checkers Drive-In Restaurants, Inc. (M.D. Fl.): A recovery of over $8.175 million was obtained for the class.

In re Mesa Airlines Securities Litigation (D.N.M.): A recovery of $8 million was obtained for the class.

In re Resound Securities Litigation (N.D. Cal.): A recovery of $8 million was obtained for the class.

4

WEISS & LURIE

In re Castle Energy Corp. Securities Litigation (C.D. Cal.) A recovery of $7.5 million was obtained for the class.

In re Western Digital, Inc. Securities Litigation (C.D. Cal.): A recovery of $6.75 million was obtained for the class.

In re Circle K Securities Litigation (D. Ariz.): A recovery of $6 million was obtained for the class.

In re Aura Systems, Inc. Securities Litigation (C.D. Cal.): A recovery of $5.55 million was obtained for the class.

In re Ascend Communications Securities Litigation (C.D. Cal.): A recovery of $5.45 million was obtained for the class.

In re Southmark Securities Litigation (D. Tex.): A recovery of $5 million was obtained for the class.

In re WCT Securities Litigation (C.D. Cal.): A recovery of $5 million was obtained for the class.

In re Sumitomo Bank of California Securities Litigation (San Francisco Sup. Ct.): A recovery of $4.95 million was obtained for the class.

In re NextLevel Systems, Inc. Securities Litigation (N.D. Ill.): A recovery of $4.6 million was obtained for the class.

In re Shopping.com Securities Litigation (C.D. Cal.): A recovery of $4.5 million was obtained for the class.

In re Denver Bonds Securities Litigation (D. Colo.): A recovery of $4.5 million was obtained for the class.

In re Molecular Dynamics, Inc. Securities Litigation (N.D. Cal.): A recovery of $4 million was obtained for the class.

In re Party City Corp. Securities Litigation (D.N.J.): A recovery of $3.8 million was obtained for the class.

In re Iwerks Securities Litigation (C.D. Cal.): A recovery of approximately $3.5 million was obtained for the class.

In re Davstar, Inc. Securities Litigation (C.D. Cal.): A recovery of $3.4 million was obtained for the class.

In re Trident Securities Litigation (N.D. Cal.): A recovery of $3.15 million was obtained for the class.

In re Twinlab Corp. Securities Litigation (E.D.N.Y.): A recovery of $3 million was obtained for the class.

WEISS & LURIE

In re Offshore Pipelines Securities Litigation (S.D.N.Y.): A recovery of $3 million was obtained for the class.

Gorga v. Uniroyal Chemical Corp. (Sup. Ct. Conn.): A recovery of $3 million was obtained for the class.

In re Amylin Pharms. Securities Litigation (S.D. Cal.):  A recovery of $2.1 million was obtained for class.

### CLASS AND DERIVATIVE ACTIONS HANDLED BY WEISS & LURIE WHERE A SIGNIFICANT BENEFIT WAS OBTAINED FOR THE COMPANY AND/OR THE SHAREHOLDERS

In re Santa Fe Southern Pacific Corporation (Del. Ch.).

In re Genentech Shareholder Litigation (N.D. Cal.).

In re Beverly Enterprises Shareholder Litigation (Del. Ch.).

In re Tandon Computer Shareholder Litigation (C.D. Cal.).

In re Sears Shareholder Litigation (D. Ill.).

In re Xoma Shareholder Litigation (N.D. Cal.).

In re Castle Energy Corp. Shareholder Litigation (C.D. Cal.).

In re Times-Mirror, Inc. Shareholder Litigation (C.D. Cal.).

In re Lockheed Corp. Shareholder Litigation (C.D. Cal.).

In re Nexgen Securities Litigation (N.D. Cal.).

In re GT Greater Europe Securities Litigation (N.D. Cal.).

In re Pairgain Securities Litigation (S.D. Cal.).

In re AMI Securities Litigation (L.A. Superior).

Wallace v. Fox, et al. (Northeast Utilities) (D. Conn.).

WEISS & LURIE

## BRIEF BIOGRAPHIES OF WEISS & LURIE ATTORNEYS

**JOSEPH H. WEISS** is a 1972 graduate of Columbia University Law School, where he was an editor of the Law Review. He is also a 1972 graduate of Columbia University Graduate School of Business from which he obtained a Masters in Business Administration. Mr. Weiss is a member of the Bar of the State of New York and is admitted to practice in the Southern District of New York, the Eastern District of New York, the Courts of Appeal for the First, Second, Third, Ninth and Federal Circuits, and has been admitted to practice in numerous other federal and state courts. He specializes in prosecuting class and derivative actions throughout the United States and has been appointed lead counsel and successfully concluded numerous such actions.

**JORDAN L. LURIE** is a partner in the Los Angeles office. Mr. Lurie received his law degree in 1987 from the University of Southern California Law Center where he was Notes Editor of the University of Southern California Law Review. He received his undergraduate degree from Yale University in 1984 (*cum laude*). Mr. Lurie has participated in all aspects of class actions. Mr. Lurie is the co-author of "Postponing a Municipal Court Election: The November Election Provision of Government Code Section 71180(b)," California Courts Commentary, November 1989; co-author of "Chapter 54 - Consent Judgment" and "Chapter 55 - Submitted Case," Civil Procedure Before Trial (1990), published by California Continuing Education of the Bar; and author of "Rx for Pharmacy Malpractice: California's New Duty to Consult," CEB Civil Litigation Reporter, December 1991.

Mr. Lurie also has been a featured speaker at California Mandatory Continuing Legal Education seminars regarding securities fraud and class actions. Mr. Lurie is a member of the State Bar of California and is admitted to practice before the United States District Courts for the Northern, Southern, Central and Eastern Districts of California.

**MOSHE BALSAM** is a senior associate in the New York office. He graduated from Brooklyn Law School in 1981 with a specialty in securities law. He was admitted to the New York State Bar in

7

WEISS & LURIE

1982. Mr. Balsam is also a member of the bars of the United States District Courts for the Southern and Eastern Districts of New York and has been admitted to practice before various other state and federal courts. He has participated in all aspects of numerous class action and shareholder derivative cases.

**DAVID C. KATZ** is a senior associate in the New York office. He is a 1988 Graduate of Benjamin N. Cardozo School of Law. He is admitted to the New York State Bar and the United States District Courts for the Southern and Eastern Districts of New York. He is experienced in all aspects of securities class and derivative litigation at both the trial and appellate level, and leads the firm's efforts devoted to enhancing corporate governance.

**JOSEPH D. COHEN** is a senior associate in the New York office. He graduated from Case Western Reserve University School of Law in May 1989, where he received an award for excellence in Business Law. He received an LL.M in Corporate law from New York University in 1990. Mr. Cohen has co-authored several articles: "Mitsubishi and Shearson: A Misplaced Trust in Arbitration," New England Business Law Journal, 1990; "The Effects of Tax Reform on Golden Parachutes," North Atlantic Regional Business Law Review, August 1988; "Dual Class Common Stock and Its Effects on Shareholders and Legislators," American Business Law Association National Proceedings, August 1988.

Mr. Cohen is admitted to the State Bars of California and Rhode Island, as well as the District of Columbia and the United States District Courts for the Central, Southern and Northern Districts of California.

**JAMES E. TULLMAN** is an associate in the New York office. He graduated from the University of Delaware (B.A., 1988), and The Jacob D. Fuchsburg Law Center of Touro College (J.D., 1991), where he was an editor of the Journal of the Suffolk Academy of Law, Touro College, 1990-1991. Mr. Tullman is admitted to the state bars of Connecticut, New York, and California, as well as the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central and Southern Districts of California, and the United States Court of Appeal for the Ninth and Third Circuit.

WEISS & LURIE

**RICHARD A. ACOCELLI** is an associate in the New York Office. He received his law degree in 1990 from St. John's University School of Law. He is admitted to the State Bar of New York and the United States District Courts for the Southern and Eastern Districts of New York and the Eastern District of Michigan.

**JACK I. ZWICK** is an associate in the New York Office. He received his law degree in 1993 from Benjamin N. Cardozo School of Law. He is admitted to the New York State Bar and the United States District Courts for the Southern and Eastern Districts of New York.

**LEIGH A. PARKER** is an associate in the Los Angeles office. She graduated from Indiana University (B.A. 1981), received her M.B.A. from the American Graduate School of International Management in 1982 and graduated from Loyola Law School in 1993, where she was a member of the Scott Moot Court Honors Board. She is admitted to the Bar of the State of California and the United States District Courts for the Central, Northern, Southern and Eastern Districts of California, as well as the Ninth Circuit Court of Appeals.

**MARK D. SMILOW** is an associate in the New York office. He graduated Benjamin N. Cardozo School of Law in 1993, *magna cum laude*, where he was a member of the Cardozo Law Review. He is admitted to the New York and New Jersey State Bars, and the United States District Courts for the Southern and Eastern Districts of New York. He has also been admitted in other courts throughout the nation for particular cases. He has litigated all aspects of numerous class, shareholder, derivative and consumer class actions in both trial and appellate courts.

**ZEV B. ZYSMAN** is an associate in the Los Angeles office. He graduated from the University of Southern California (B.A. 1991), and received his law degree from the University of California, Hastings College of the Law (J.D. 1994). Mr. Zysman is admitted to the Bar of the State of California and the United States District Court for the Central District of California.

9

WEISS & LURIE

**JULIA J. SUN** is a junior associate in the New York office. She received her B.A. in Political Science from Barnard College, Columbia University in 1998 and her J.D. from Brooklyn Law School in 2003. Ms. Sun is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.

**ILYA NUZOV** is a junior associate in the New York office. He received his B.S. in Finance from Rutgers University in 2001 and his J.D. from Brooklyn Law School in 2004. During law school, Mr. Nuzov worked at the State of New Jersey Office of the Attorney General, Bureau of Securities. Mr. Nuzov is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York.

**JOSHUA M. RUBIN** is a junior associate in the New York office. He received a Bachelor of Talmudic Law from Ner Israel Rabbinical College in 2002 and his J.D. from Benjamin N. Cardozo School of Law in 2005. Mr. Rubin is admitted to the Bar of the State of New York and the United States District Courts for the Southern and Eastern Districts of New York. He is also an arbitrator qualified by the New York State Dispute Resolution Association and an emergency medical technician.

10

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

07 CV 10323

| | |
|---|---|
| MEIRA RUBIN, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>FUWEI FILMS (HOLDINGS) CO., LTD., XIAOAN HE, LIN TANG, MARK E. STULGA, TONGJU ZHOU, DUO WANG, JUN YIN, MAXIM GROUP LLC,  CHARDAN CAPITAL MARKETS, LLC, and WR HAMBRECHT & CO. LLC, )<br><br>Defendants. ) | **CIVIL ACTION NO.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, for her complaint against the defendants, alleges the following upon personal knowledge as to herself and her own acts and upon information and belief based upon the investigation conducted by her attorneys as to all other matters:

## NATURE OF THE ACTION

1.    This is a securities class action seeking redress under the strict liability provisions of the federal securities laws on behalf of all persons who purchased shares of Fuwei Films (Holdings) Co., Ltd. ("Fuwei" or the "Company") pursuant or traceable to the Registration Statement and Prospectus issued in connection with the Company's Initial Public Offering on or about December 19, 2006 ("IPO") and through November 12, 2007, against Fuwei and certain of its officers and directors including all those who signed the Registration Statement and Prospectus pursuant to the IPO.

2.      The Registration Statement and Prospectus issued in connection with the IPO were materially false and misleading, and/or omitted material information necessary to make the statements made, in light of such material omissions, not materially false and misleading.

## JURISDICTION AND VENUE

3.      The claims asserted herein arise under and pursuant to Sections 11, 12(2) and 15 of the Securities Act of 1933, as amended (the "Securities Act") [15 U.S.C. §§ 77k,77l and 77o].

4.      This Court has jurisdiction over the subject matter of this action pursuant to Section 22(a) of the Securities Act, 15 U.S.C. §77v(a).

5.      Venue is proper in this Judicial District pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a). Pursuant to 28 U.S.C. § 1391(d), Fuwei may be properly sued in any District in the United States, including the Southern District of New York. Moreover, Fuwei's common stock trades on the NASDAQ Global Market, which is located in this District. Thus, venue is proper in this District.

6.      In addition, the Underwriter Defendants all maintain offices in this district.

7.      In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange.

## PARTIES

8.      Plaintiff Meira Rubin, as set forth in the attached certification, purchased shares of Fuwei pursuant to the false and misleading Registration Statement and Prospectus.

2

9.      Defendant Fuwei is a Cayman Islands Corporation with its principal place of business in the People's Republic of China. Fuwei, through its wholly owned subsidiary, develops, manufactures, and distributes plastic films using the biaxial oriented stretch technique. The Company's products include printing base film, stamping foil base film, metallization film or aluminum plating base film, laser holographic base film, single/double surface matte film, anti-counterfeit film, chemical pretreated film, and high-gloss film. Its films are used in consumer-based packaging, such as food, pharmaceutical, cosmetics, tobacco, and alcohol industries; imaging, such as masking film, printing plates, and microfilms; electronics and electrical industries, such as wire and cable wrap, capacitors and motor insulation; and in magnetic products, such as audio and video tapes.

10.      Fuwei's common stock trades on the NASDAQ Global Market under the ticker symbol "FFHL."

11.      Defendant Xiaoan He ("He") was at all relevant times herein the Company's Chairman and Chief Executive Officer and in such capacity signed the Registration Statement.

12.      Defendant Lin Tang ("Tang") was at all relevant times herein the Company's Chief Financial Officer and a Director and in such capacity signed the Registration Statement.

13.      Defendant Mark E. Stulga ("Stulga") was at all relevant times herein a Director of the Company as well as its Authorized Representative in the United States and in such capacity signed the Registration Statement.

14.      Defendant Tongju Zhou ("Zhou") was at all relevant times herein a Director of the Company and in such capacity signed the Registration Statement.  Zhou was also a co-owner of

3

15% of the Company at the time of the Company's IPO and currently co-owns approximately 12.5% of the Company.

15.    Defendant Duo Wang ("Wang") was co-owner of 15% of the Company together with Zhou at the time of the IPO and currently co-owns approximately 12.5% of the Company. Wang, through his ownership and control of the Company, was a controlling person of Fuwei within the meaning of the Securities Act.

16.    Defendant Jun Yin ("Yin") was a 55% owner of the Company at the time of the Company's IPO and currently owns approximately 52.9% of the Company. Yin, through his ownership and control of the Company, was a controlling person of Fuwei within the meaning of the Securities Act.

17.    He, Tang, Stulga, Zhou, Wang and Yin are collectively referred to hereinafter as the "Individual Defendants."

18.    Defendant Maxim Group LLC ("Maxim"), acted as an underwriter for the IPO and as Sole Book Runner.

19.    Defendant WR Hambrecht & Co. LLC ("WR Hambrecht"), acted as an underwriter for the IPO.

20.    Defendant Chardan Capital Markets, LLC ("Chardan"), acted as an underwriter for the IPO.

21.    Maxim, WR Hambrecht and Chardan are collectively referred to hereinafter as the "Underwriter Defendants."

## FALSE AND MISLEADING STATEMENTS AND OMISSIONS

22.     On December 19, 2006, Fuwei went public via its global IPO of 4,312,500 shares (including the over-allotment option of up to 562,500 shares) for gross proceeds of approximately $35,707,500. Prior to the IPO, no public market existed for trading of the Company's securities.

23.     Unbeknownst to investors, however, the Registration Statement and Prospectus issued in connection with the IPO were materially false and misleading because, among other things, they contained representations that the Company's purchase of its main operating assets at two public auctions in October 2003 and December 2004 were legal and valid, while in truth the method and manner of the December 2004 purchase not only violated Chinese laws and/or regulations, but were actually criminal in nature, as demonstrated below.

24.     With respect to the October 2003 acquisition, the Prospectus and Registration Statement represented that the Company's Brückner production line fixed assets were acquired from Shandong Neo-Luck (hereinafter "Neo-Luck" or Neoluck"), a now bankrupt Chinese company, whose management executives were Defendants Yin, Wang and Zhou:

> Shandong Fuwei, our PRC operating subsidiary, was formed on January 28, 2003, as a sino-foreign equity joint venture under the name Weifang Fuwei Plastic Co., Ltd. In July 2003, this company began production of BOPET film, initially renting the necessary fixed assets from Shandong Neo-Luck, a company involved in BOPET film production for which Mr. Xiaoming Wang and Dr. Yongping Bai, our current executive officers, each served as executive officers at the time.

> Shandong Fuwei subsequently acquired these fixed assets through two auction proceedings, the first in October of 2003 and the second in December 2004. At the first auction proceeding in October 2003, Shandong Fuwei acquired assets related to the Brückner production line that it had been renting from Shandong Neo-Luck. This line had been previously mortgaged by Shandong Neo-Luck to the Bank of China, Weifang city branch as security for several loans extended to Shandong

5

Neo-Luck's affiliates. When these loans went into default, the Bank of China brought a series of legal actions in Weifang Municipal People's Court that resulted in the assets securing the loans being sold at public auction. Following its successful bid at auction, on October 9, 2003, Shandong Fuwei acquired the Brückner production line (with an appraised value of approximately RMB 169 million) for RMB 156 million.

25.    With respect to the December 2004 acquisition, the Prospectus and Registration Statement represented that the Company's other fixed asset, the DMT production line, which had been Neo-Luck's major asset and had been pledged to Weifang City Commercial Bank, was acquired by Fuwei under the following circumstances:

When Shandong Neo-Luck was declared bankrupt, the Shandong Branch of the Bank of China seized the [DMT] production line [on September 24, 2004] by order of the Qingdao Intermediate People's Court and the Qingdao Southern District People's Court while the Weifang Branch of Bank of Communications did so [seizing the same assets] through Weifang Intermediate People's Court. As such, the effectiveness of the pledge in favor of Weifang City Commercial Bank was under dispute. Subsequently, pursuant to the decision from Weifang Intermediate People's Court, Weifang City Commercial Bank ranked senior in terms of the right of claims.

The pledged DMT production was put up for public auction by the Shandong Neo-Luck liquidation committee on October 22, 2004. In view of the above complexities, the auction was deemed to be tremendously risky at that time, and therefore, our PRC operating subsidiary did not directly participate in the first auction, which began with a bid price of approximately RMB 53 million by reference to an independent valuation performed on a forced sale basis. However, due to the potential tremendous risk involved, the auction had been withdrawn twice and the starting bid price had been further reduced to approximately RMB 34 million and was finally purchased by Beijing Baorui, a company indirectly controlled by Shandong Baorui. When the DMT production line was put for public auction by Beijing Baorui three months later, our PRC operating subsidiary purchased it for approximately RMB 119 million, which was supported by an independent valuation performed on a going concern basis. We considered the arrangement to have the DMT production line acquired through Beijing Baorui through the first auction as an effective way to minimize the risk associated with the uncertainties arising from the bankruptcy of Shandong Neo-Luck. The price difference of approximately RMB 85 million represented a risk premium paid to

6

Beijing Baorui, which bore the ultimate risks of recourse from creditors of Shandong Neo-Luck.

26.    The foregoing representations were materially false and misleading because the Prospectus and Registration Statement did not disclose that there was bid rigging going on in connection with the purchase of the DMT production line, that the purchase of the DMT production line was not made at arms-length and, to the contrary, was the result of criminal acts that could result in the conviction of one of the Company's directors and two of the Company's largest shareholders as well as the seizing of the illegitimately purchased equipment. Specifically, the Prospectus and Registration Statement failed to:

a.    provide complete disclosure as to the circumstances surrounding the Company's acquisition of the DMT production line which render the statements made in the Prospectus materially false and misleading; and

b.    reveal that Beijing Baorui, the company that first purchased the DMT production line, was controlled by Defendants Yin and Wang, and that they manipulated the purchase of the DMT production line at a steeply discounted price, so that they could turn around and sell it to another company they controlled and owned, Fuwei, through a mock auction at a substantially elevated price.

**THE TRUTH STARTS TO COME OUT**

27.    On June 25, 2007, prior to the opening of the New York financial markets, Fuwei shocked the market when it announced that Defendants Yin, Wang and Zhou were being investigated in China by the Chinese authorities. The press release falsely represented the

7

investigation as being "a result of the ongoing financial dispute between Neo-Luck and **a certain**

**Chinese asset management company**." The press release misleadingly intimated that Fuwei's

only connection to the investigation was the fact that some of its largest shareholders happened to

be the targets of that investigation. It did not explain that the "certain Chinese asset management

company" was actually a former parent company of Fuwei. Specifically, the press release stated

in pertinent part:

> Fuwei Films Discusses Proceedings Related to Three of Its Stockholders

> BEIJING, June 25 /Xinhua-PRNewswire-FirstCall/ – Fuwei Films (Holdings)
> Co., Ltd. (Nasdaq: FFHL - News; "Fuwei Films") today stated that it had become
> aware of reports that Mr. Jun Yin, Mr. Duo Wang, and Mr. Tongju Zhou are
> involved in an investigation conducted by the Chinese Communist Party that
> began in May and mid-June 2007. Mr. Jun Yin is a 53% shareholder of Fuwei
> Films and Mr. Tongju Zhou, a director of Fuwei Films, together with Mr. Duo
> Wang, indirectly own 14% of Fuwei Films. None of these individuals are
> involved in Fuwei Films' day-to-day operations.

> Upon Fuwei Films' receipt of what it deems to be credible, accurate and verifiable
> information relating to such investigation, it will promptly notify the public
> thereof. Unofficial sources have reported that the inquiry relating to these three
> individuals is as a result of the ongoing financial dispute between Weifang
> Neoluck Group ("Neoluck") and a certain Chinese asset management company.
> Messrs. Yin, Zhou and Wang are the former management executives of Neoluck.
> Although Fuwei purchased certain equipment formally owned by Neoluck through
> a public auction, Neoluck does not have any current relationship with Fuwei
> Films.

28.     The June 25, 2007 announcement stinted the Company's stock price fall of over

14% or $1.01 per share, from the previous trading day.

### THE TRUTH IS REVEALED

29.     On October 16, 2007, Fuwei shocked the market when it issued a press release

prior to the opening of the New York financial markets. In updating the markets on the status of

the legal proceedings against Yin, Wang and Zhou, the Company disclosed that an arrest warrant

had been issued for Yin, Wang and Zhou two weeks prior, on September 28, 2007. They were

charged with crimes of "irregularities for favoritism and to sell state-owned assets at low prices."

The press release reported that "[a]t this time, there has not been any judicial or formal official

notification to Fuwei Films that the investigation or charges involving the three shareholders

relates to the purchase by Fuwei Films of state-owned equipment that is used in connection with

its business."

30.    This disclosure caused the Company's stock to drop sharply, over 23.5% or $2.25

per share, from the previous day's trading.

31.    In addition, as a result of the investigation and arrest of the three significant

Company shareholders, the Company's independent accountant, Murrell, Hall, McIntosh & Co.

PLLP, resigned its position effective November 1, 2007.

32.    Also, Defendants Zhou and Stulga both resigned from the Board of Directors,

effective October 18, 2007.

33.    As a result of the director resignations, the Company is on track to be delisted

from the NASDAQ. On November 2, 2007, the Company announced it had received a

NASDAQ Staff Deficiency Letter stating that the Company was not in compliance with the

Nasdaq Marketplace Rules 4350(a)(5) requiring a majority of independent directors on the Audit

Committee.

34.    The Company's shares plummeted once again on Monday, November 12, 2007

after the Company announced prior to the opening of the New York financial markets, that the

implementation of a planned Third Production Line was to be delayed as a result of "a capital

9

shortfall." The Company's attempt to secure financing was being complicated because of a "limited response from commercial banking lenders because of the shareholder investigation." As a result, Fuwei has been looking for financing opportunities from funds in the United States but has yet to secure financing. Moreover, in response to a question during the earnings conference call on November 12, 2007, Fuwei's management was unable to give any guidance on when -- and if -- financing would be secured.

35.    This disclosure caused the Company's stock to once again drop precipitously to close at $3.71 per share, a drop of 21% down approximately 56% from its IPO. The stock declined further to trade just above $3.00 per share on the next day, November 13, 2007.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of herself and a class consisting of all persons who purchased shares of Fuwei common stock pursuant to the Registration Statement and Prospectus issued in connection with Fuwei's IPO through October 16, 2007 (the "Class" and the "Class Period" respectively) Excluded from the Class are defendants herein, members of the immediate family of each of the defendants, any person, firm trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

37.    The members of the Class are so numerous that joinder of all members is impracticable. Over 4.3 million Company shares of common stock were sold to members of the investing public in the IPO. The precise number of class members is unknown to plaintiff at this

10

time but is believed to number at least in the hundreds. In addition, the names and addresses of the class members can be ascertained from the books and records of Fuwei, its transfer agents or the underwriters for the IPO.

38.    The members of the Class are so numerous that joinder of all members is impracticable.

39.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to prosecute this action vigorously.

40.    Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff and all the class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants. Plaintiff does not have interests antagonistic to, or in conflict with, the Class.

41.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

42.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the Registration Statement and Prospectus omitted and/or misrepresented material information about Fuwei and its finances, business and assets;

(b)    Whether defendants violated the Securities Act in connection with the offering and sale of Fuwei securities;

(c)    Whether the Individual Defendants and Underwriter Defendants are controlling persons of Fuwei within the meaning of § 15 of the Securities Act;

(d)    Whether the Individual Defendants and Underwriter Defendants exercised due diligence in connection with the IPO;

(e)    Whether the market price of the Company's securities was artificially inflated due to the material misrepresentations and/or nondisclosures complained of herein; and

(f)    The extent of injuries sustained by members of the Class and the appropriate measure of damages.

## COUNT I

### Against Fuwei And Each Of The Individual Defendants

### (Section 11)

45.    Plaintiff repeats and realleges each and every allegation contained above.

46.    This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against Fuwei and the Individual Defendants.

47.    The defendants issued, caused to be issued, participated in the issuance of and/or signed the Registration Statement and Prospectus and offered, sold, and/or solicited for financial gain the common stock sold in the IPO to plaintiff and the Class.

12

48.     The Registration Statement and Prospectus for the IPO were inaccurate and misleading, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading in the context in which they were made.

49.     The Individual Defendants signed, either personally or through an attorney-in-fact, the Registration Statement and Prospectus and also served as senior executives and/or directors of the Company at the time of the IPO and as such were responsible for the contents and dissemination of the Registration Statement and Prospectus.

50.     The Individual Defendants failed to conduct reasonable investigation or possess reasonable grounds for believing that the statements contained in the Registration Statement and Prospectus were true, did not omit any material facts and were not materially misleading. Had any of the material facts which were omitted, been disclosed, it would have been impossible to successfully complete the IPO.

51.     Defendants issued, caused to be issued and participated in the issuance of materially false and misleading statements to the investing public which were contained in the Registration Statement and Prospectus, which misrepresented or failed to disclose, among other things, the facts set forth above. By reason of the conduct herein alleged, each defendant violated Section 11 of the Securities Act.

52.     Plaintiff and the Class acquired Fuwei shares issued pursuant to, or traceable to, the Registration Statement and Prospectus.

53.     Plaintiff and the Class have sustained damages. The value of Fuwei shares has declined dramatically subsequent to the IPO and due to defendants' violations.

13

54.    At the time they purchased Fuwei shares, members of the Class were without

knowledge of the facts concerning the wrongful conduct alleged herein and could not, in the

exercise of reasonable diligence, have discovered those facts at that time.  Less than one year

elapsed from the time that plaintiff discovered or reasonably could have discovered the facts

upon which this Complaint is based to the time that plaintiff filed her Complaint.  Less than three

years elapsed from the time that the securities upon which this Count is brought were <u>bona</u> <u>fide</u>

offered to the public to the time plaintiff filed her Complaint.

## COUNT II

### Against Each Of The Defendants

### (Section 12(2))

55.    Plaintiff repeats and realleges each and every allegation contained above.

56.    This Count is being asserted under and pursuant to Section 12(2) of the Securities

Act, 15 U.S.C. § 77*l*, on behalf of the Class, against all defendants.

57.    The defendants offered, sold, or solicited for financial gain the securities sold in

the IPO to the Class.

58.    The Registration Statement and Prospectus included untrue statements of material

fact and omitted to state material facts necessary in order to make the statements made, in light of

the circumstances under which they were made, not misleading.  The defendants' actions of

solicitation included, *inter alia* participating in the preparation of the false and misleading Regi-

stration Statement and Prospectus.

59.    The defendants owed to the purchasers of Fuwei common stock the duty to make

a reasonable and diligent investigation of the statements contained in the Registration Statement

14

and Prospectus, to insure that such statements were true and that there was no omission to state a

material fact required to be stated in order to make the statements contained therein not

misleading.

60.    Class members did not know of any of the untruthful statements and omissions

alleged and in the exercise of reasonable care could not have known of them.

61.    By reason of the conduct alleged herein, defendants violated §12(2) of the

Securities Act. As a direct and proximate result of the defendants' wrongful conduct, purchasers

of Fuwei securities suffered substantial damage in connection with the purchase thereof.

62.    This action is commenced within three years of the IPO and within one year of the

time plaintiff and the other Class member purchasers of the securities discovered or could have

discovered the existence of untrue statements by exercising due diligence.

63.    By reason of the foregoing, the defendants have violated §12(2) of the Securities

Act.

64.    Purchasers of Fuwei securities pursuant to the IPO hereby tender their securities to

the defendants and seek rescission of their purchases to the extent that they continue to own such

securities.

## COUNT III

### Against Each Of The Individual Defendants And Underwriter Defendants

### (Section 15)

65.    Plaintiff repeats and realleges each and every allegation contained above.

66.    This Count is asserted against the Individual Defendants and Underwriter

Defendants under and pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o. By reason of

their ownership, senior management positions and/or directorships as alleged above, these defendants had the power to influence and exercised the same to cause Fuwei to engage in the unlawful acts and conduct complained of herein.

67.     By reason of such wrongful conduct, the Individual Defendants and Underwriter Defendants are liable pursuant to Section 15 of the Securities Act. As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's securities.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of herself and the Class, prays for judgment as follows:

A.     declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23(a) and (b) (3) of the Federal Rules of Civil Procedure;

B.     appointing plaintiff as lead plaintiff and class representative and her counsel as lead class counsel;

C.     awarding plaintiff and other members of the Class damages together with pre-judgment interest thereon;

D.     awarding plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

E.     awarding plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

16

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  November 14, 2007
        New York, New York

                                    WEISS & LURIE

                                    Joseph H. Weiss (JW-4534)
                                    Mark D. Smilow (MS-2809)
                                    Jack I. Zwick (JZ-2514)
                                    551 Fifth Avenue
                                    New York, New York  10176
                                    (212) 682-3025

                                    STULL, STULL & BRODY
                                    Jules Brody (JB-9151)
                                    6 East 45th Street
                                    New York, New York 10017
                                    (212) 687-7230

                                    Attorneys for Plaintiff

17

CERTIFICATION OF PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

MEIRA RUBIN ("Plaintiff") certifies as follows:

1.      I have reviewed a draft complaint against Fuwei Films (Holdings) Co., Ltd. and others and authorize its filing.

2.      I did not purchase the security that is the subject of this action at the direction of counsel or in order to participate in this private action.

3.      I am willing to serve as the representative party, including providing testimony at deposition and trial, if necessary.

4.      On December 19, 2006, I purchased 1,500 shares of Fuwei Films (Holdings) Co., Ltd. in the IPO at a price of $8.28.  I still retain all the shares of Fuwei Films (Holdings) Co., Ltd.

5.      I have not sought to serve as the representative party in any federal securities case in the last three years.

6.      I will not accept any payment for serving as the representative party beyond Plaintiff's pro rata share of any recovery, except as ordered or approved by the court, including any award for reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

7.      I hereby certify, under penalty of perjury, that the foregoing is true and correct to the best of my current knowledge, information and belief.

DATED:      November 12, 2007

_____
Meira Rubin