UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

──────────────────
Nº 07 Civ. 9416 (RJS)
──────────────────

IN RE FUWEI FILMS SECURITIES LITIGATION

──────────────────
MEMORANDUM AND ORDER
January 24, 2008
──────────────────

RICHARD J. SULLIVAN, District Judge:

Before the Court are two motions[1] to consolidate two putative class actions brought under the federal securities laws by shareholders of Fuwei Films (Holdings) Co., Ltd. ("Fuwei"). The two actions are: *Yao v. Fuwei Films (Holdings) Co., Ltd., et al.*, No. 07 Civ. 9416 (RJS) ("*Yao*"), and *Rubin v. Fuwei Films Holdings Co., Ltd., et al.*, No. 07 Civ. 10323 (RJS) ("*Rubin*"). Also before the Court are two motions to appoint a lead plaintiff or co-lead plaintiffs, and to approve lead plaintiff's selection of counsel in the actions.

For the reasons outlined below, the motions of Tonyaz, and Rubin and Leru to consolidate these two actions are GRANTED. Movant Nijat Tonyaz's motion to be appointed lead plaintiff is GRANTED, and his motion for approval of lead counsel is GRANTED. The remaining motions of movants Meira Rubin and Costachi Leru are DENIED.

I. BACKGROUND

A. Facts

Both the *Yao* complaint ("Yao Complaint") and the *Rubin* complaint ("Rubin Complaint") contain the same basic factual allegations. The plaintiffs allege that they are purchasers of shares of Fuwei, a Cayman Islands company with its principal place of business in China. (Yao Compl. ¶ 7; Rubin Compl. ¶ 9.) Fuwei specializes in producing various types of plastic "films," used in an assortment of products in many industries, including, *inter alia*, consumer-based packaging, imaging, and electronics. (Yao Compl. ¶ 8; Rubin Compl. ¶ 9.) Fuwei stock

---

[1] Siamak Nazhand filed a motion on December 18, 2007 seeking to be appointed lead plaintiff in this action, but withdrew that motion on January 10, 2008.

trades on the NASDAQ Global Market under the ticker "FFHL." (Yao Compl. ¶ 9; Rubin Compl. ¶ 10.) Pursuant to Fuwei's Initial Public Offering ("IPO"), held in December 2006, Fuwei sold approximately 4.3 million shares at $8.28 per share for gross proceeds of $35,707,500. (Yao Compl. ¶¶ 16, 23; Rubin Compl. ¶ 22.)

Plaintiffs allege that, in the months following the IPO, it was revealed that the Registration Statement and Prospectus filed in connection with the IPO were false and misleading and/or contained materially false representations and/or omissions. (Yao Compl. ¶ 24; Rubin Compl. ¶ 23.) Specifically, plaintiffs allege, *inter alia*, that the Registration Statement and Prospectus failed to reveal that Fuwei acquired its main operating assets in violation of Chinese law. (*Id.*) Plaintiffs assert that while the issues resulting in the material misstatements and/or omissions existed and were known by Fuwei at the time of the IPO, and thus should have been disclosed in the IPO documents, they were not made public until Fuwei made two announcements, one on June 25, 2007 and one on October 16, 2007, that the Chinese authorities were investigating certain of the individual defendants. (Yao Compl. ¶¶ 24-27; Rubin Compl. ¶¶ 27-29.) In addition, the Rubin Complaint alleges that Fuwei announced on November 12, 2007 that the company's implementation of a third production line would be delayed due to a lack of financing related to the investigation. (Rubin Compl. ¶ 34.) Both complaints allege that these announcements precipitated multiple drops in the price of Fuwei stock, to the detriment of purchasers of Fuwei stock pursuant and traceable to the IPO. (Yao Compl. ¶¶ 26, 28; Rubin Compl. ¶¶ 28, 30, 34-35.)

B. Procedural History

As discussed above, both complaints assert the same basic issues of fact and law, with some variation. The Yao Complaint was filed on October 19, 2007, by Yinglu Yao, individually and on behalf of all others similarly situated, asserting claims arising under §§ 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*, against Fuwei, as well as four individual defendants — Xiaoan He, Jun Yin, Duo Wang, and Yongju Zhou — who are alleged to be officers, directors, or owners of Fuwei. (Yao Compl. ¶¶ 7, 10-13.) The Yao Complaint asserts § 11 claims against all defendants as well as claims against the individual defendants arising under § 15 of the Securities Act. (*Id.* ¶¶ 29-44.)

The Rubin Complaint was filed on November 14, 2007, by Meira Rubin, individually and on behalf of all others similarly situated, and asserts claims arising under §§ 11, 12, and 15 of the Securities Act of 1933. (Rubin Compl. ¶¶ 45-67.) Like the Yao Complaint, the Rubin Complaint asserts claims against Fuwei, as well as three of the four individuals named in the Yao Complaint. (*Id.* ¶¶ 9, 11, 15-16.) However, the Rubin Complaint also names three additional officers and/or directors as defendants (*id.* ¶¶ 12-14), as well as three entities alleged to have been underwriters of the Fuwei IPO — Maxim Group LLC, Chardan Capital Markets, LLC, and WR Hambrecht & Co. LLC (*id.* ¶¶ 18-20).

On December 18, 2007, movants Tonyaz, Rubin and Leru, and Nazhand filed motions for consolidation, appointment as lead plaintiff, and approval of selection of counsel, in accordance with the requirement of the Private Securities Litigation Reform Act of 1995 ("PSLRA") that motions for the

2

appointment of lead counsel be made no more than 60 days after the publication of the first notice issued advising investors of the pendency of the action. *See* 15 U.S.C. §§ 78u-4(a)(3)(A) and (B). The motions were timely, given that the first notice to investors pertaining to this matter was published on October 19, 2007. (*See* Kim Decl. ¶ 2, Ex. 1.) As movant Nazhand withdrew his motion on January 10, 2008, the motions of movant Tonyaz and movants Rubin and Leru are the only motions that remain.

II. CONSOLIDATION

A. Standard for Consolidation

A court may consolidate two or more actions pursuant to Fed. R. Civ. P. 42(a) where the actions involve "a common question of law or fact." *See* Fed. R. Civ. P. 42(a); *see also Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). The trial court has broad discretion to consolidate actions under Rule 42(a), *Johnson*, 899 F.2d at 1284, and cases may be consolidated even where certain defendants are named in only one of the complaints. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (citations omitted). However, while a court may enter orders of consolidation "to avoid unnecessary costs or delay," "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." *Johnson*, 899 F.2d at 1284-85 (citations omitted).

B. Analysis

Consolidation of these two actions pursuant to Rule 42(a) is appropriate because the complaints are largely overlapping and raise common questions of law and fact. *See Devlin*, 175 F.3d at 130. Both complaints assert causes of action under the Securities Act of 1933 in connection with the Fuwei IPO, and on behalf of all purchasers of the common stock of Fuwei from the date of the IPO, December 19, 2006 through the fall of 2007.[2] (Yao Compl. ¶ 1; Rubin Compl. ¶ 1.) Both complaints allege that Fuwei issued press releases on June 25, 2007 and October 16, 2007 that revealed that the Registration Statement and Prospectus issued in connection with the IPO were materially false and misleading in violation of the Securities Act of 1933, and both complaints assert that the materially misleading statements and/or omissions in the Registration Statement and Prospectus caused the various class members to purchase shares pursuant or traceable to the IPO at artificially inflated prices. (Yao Compl. ¶¶ 23-28; Rubin Compl. ¶¶ 23-35.) While the *Rubin* complaint does assert claims against additional defendants, including the underwriters, and contains slightly different facts and legal claims, neither the existence of additional defendants nor minor differences in facts and legal issues preclude consolidation. *See Dolan v. Axis Capital Holdings Ltd.*, No. 04 Civ. 8564 (RJH), 2005 WL 883008, at *2 (S.D.N.Y. April 13, 2005) (consolidating cases where, *inter alia*, one case alleged

---

[2]The *Yao* complaint alleges a class period from December 19, 2006, through October 16, 2007. (*Yao* Compl. ¶ 1.) The *Rubin* complaint alleges a class period from December 19, 2006, through November 12, 2007. (*Rubin* Compl. ¶ 1.)

claims against an additional defendant and the claims were not identical, but "similar or overlapping"); *see also Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 105 (E.D.N.Y. 2005) (consolidating cases despite slightly different class periods and defendants, and noting that the differences could be resolved with the filing of a consolidated complaint); *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 292-93 (E.D.N.Y. 1998) (consolidating cases despite slight differences in claims and alleged class periods). Additionally, all movants seek consolidation, and no one opposes consolidation. Accordingly, the actions are hereby consolidated under the above caption and docket number. The Clerk is directed to close case No. 07 Civ. 10323 (RJS).

III.  APPOINTMENT OF LEAD PLAINTIFF(S)

Also before the Court are two motions by three individual plaintiffs seeking to be appointed as lead plaintiff in this action.[3] For the reasons that follow, the Court finds that movant Nijat Tonyaz is the appropriate lead plaintiff in this consolidated action.

A.  Standard for Appointment of Lead Plaintiff

The PSLRA provides that a district court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members. . . ." 15 U.S.C. § 77z-1(a)(3)(B). Under the PSLRA, there is a rebuttable presumption that a "person or group of persons" who is a named plaintiff or proper movant and otherwise satisfies the requirements of Fed. R. Civ. P. 23 is the most adequate plaintiff, provided that person or group of persons "has the largest financial interest in the relief sought by the class . . . ." *Id.*; *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (citing 15 U.S.C. § 77z-1(a)(3)(B)); *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (noting that the court has discretion to appoint more than one lead plaintiff and can aggregate the losses suffered by that group of investors) (citing *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 46 (S.D.N.Y. 1998)).

This presumption may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class;" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). However, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004).

1.  The Requirements of Rule 23

As discussed above, the PSLRA mandates that the lead plaintiff must meet the requirements of Rule 23(a). *See* 15 U.S.C. § 77z-1(a)(3)(B). Rule 23(a) requires that a class satisfy four criteria: numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). However, "[o]f the four prerequisites to class certification, only two

---

[3] Nijat Tonyaz seeks to be appointed lead plaintiff, while Meira Rubin and Costachi Leru seek to be appointed as co-lead plaintiffs.

4

— typicality and adequacy — directly address the personal characteristics of the class representative." *Pirelli*, 229 F.R.D. at 412. "Consequently, in deciding a motion to serve as lead plaintiff, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Id.* (internal quotation marks and citations omitted); *see also Corwin v. Seizinger*, No. 07 Civ. 6728 (DC), 2008 WL 123846, at *2 (S.D.N.Y. January 8, 2008).

In order to satisfy the adequacy requirement, the lead plaintiff must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Thus, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *Pirelli*, 229 F.R.D. at 412-13 (citations omitted). Additionally, "the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy." *Id.* at 413 (citations and internal quotations omitted).

Typicality is satisfied if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (citations omitted). The lead plaintiff's claims "need not be identical to the claims of the class to satisfy the typicality requirement." *Pirelli*, 229 F.R.D. at 412. Indeed, "[t]he possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact." *Id.* at 412 (quoting *In re Prudential Sec., Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y.1995)).

2. Calculation of Financial Interest

The PSLRA does not specify a method for calculating which plaintiff has the "largest financial interest," and neither the Supreme Court nor the Second Circuit has articulated such a method. *Pirelli*, 229 F.R.D. at 404 n.15; *see also In re Olsten*, 3 F. Supp. 2d at 295. In the absence of explicit guidance, many courts, including courts in this District and in the Eastern District of New York, have adopted a four-factor test first promulgated in *Lax v. First Merch. Acceptance Corp.*, No. 97 Civ. 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997), and later in *In re Olsten*, 3 F. Supp. 2d at 295 (the "Olsten-Lax Test"). *See Pirelli*, 229 F.R.D. at 404 (collecting cases); *see also Andrada v. Atherogenics, Inc.*, No. 05 Civ. 061 (RJH), 2005 WL 912359, at *3 (S.D.N.Y. April 19, 2005); *Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 WL 1637053, at *4 (S.D.N.Y. July 20, 2004); *In re Comverse Tech., Inc. Secur. Litig.*, No. 06 Civ. 1825 (NGG) (RER), 2007 WL 680779, at *3 (E.D.N.Y. May 2, 2007). Under the Olsten-Lax Test, a prospective lead plaintiff's financial interest *may* be determined by looking to (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *In re Olsten*, 3 F. Supp. 2d at 295; *Lax*, 1997 WL 461036, at *5; *see also Pirelli*, 229 F.R.D. at 404. This Court, like many others, "shall place the most emphasis on the

5

last of the four factors: the approximate loss suffered by the movant." *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007).

### B. Analysis

#### 1. Tonyaz is the Presumptive Lead Plaintiff Under the PSLRA

Tonyaz has demonstrated that he satisfies the requirements of the PSLRA for appointment as the lead plaintiff in this consolidated action.

First, Tonyaz properly moved to be appointed lead plaintiff within 60 days of the published notice. *See* 15 U.S.C. § 77z-1(a)(3)(A)(i)(II). Second, Tonyaz satisfies the typicality and adequacy requirements of Rule 23. *See* 15 U.S.C. § 77z-1(a)(3)(B). Specifically, Tonyaz has a large financial interest in the litigation, *see Pirelli*, 229 F.R.D. at 413, there are no apparent conflicts of interest, and his claims are typical of the claims of the class as a whole, based on his ownership of Fuwei stock and the allegations contained in the *Yao* complaint.

Finally, Tonyaz is the plaintiff with the greatest financial interest in the case. Tonyaz asserts that his financial interest in the case is either $295,700.00 or $319,889.00, depending on the price used to calculate the current value of held Fuwei stock. (*See* Kim Opp. Decl. ¶ 2, Ex. 1.) He calculates his financial interest by multiplying the number of shares of Fuwei stock he purchased on four separate occasions in January 2007 by the price paid for those shares, and subtracting the value of the shares he currently holds. (*Id.*) That interest is at least $218,000 greater than the *combined* financial interest asserted by Rubin and Leru (a combined $77,302.10), calculated in a similar manner. (*See* Weiss Decl. ¶ 3, Ex. B.) Accordingly, because Tonyaz has the greatest financial interest in this action of all of the movants, there is a rebuttable presumption that he is the most adequate lead plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(B).

#### 2. Rubin and Leru's Attempts to Rebut the Presumption Fail

In opposition to Tonyaz's appointment as lead plaintiff, Rubin and Leru assert that Tonyaz is not the presumptive plaintiff because he does not meet the requirements of the PSLRA, and that, in the alternative, even if Tonyaz is the presumptive plaintiff, that presumption is rebutted because Tonyaz is subject to unique defenses and/or will not fairly and adequately protect the interests of the class. (*See generally* Rubin/Leru Opp.) Instead, Rubin and Leru argue that they should be appointed as co-lead plaintiffs because (1) only Rubin has sued the underwriters; (2) no other movant has standing to pursue claims against the underwriters under § 12(a)(s) of the Securities Act; and (3) Rubin is the only movant who purchased shares directly in the IPO from an Underwriter, and, unlike Tonyaz, need not rely on a "tracing" theory. (*See* Rubin/Leru Opp. at 1-2, 4-8.) For the following reasons, these arguments are without merit.

First, Rubin and Leru contend that Tonyaz has not satisfied the requirements of the PSLRA because Tonyaz has "grossly overstated" his financial interest in the case "by simply calculating [his] gains and losses" instead of using a damage formula consistent with that "mandated by § 11." (Rubin/Leru Opp. at 2 n.2.) Rubin and Leru argue that,

pursuant to § 11(e), recoverable damages are limited to "the price at which the security was offered to the public," which they contend was $8.28. (*Id.*) Thus, according to Rubin and Leru, it is "impossible to tell who has the largest financial stake and that may quite possibly be movant Costachi Leru." (*Id.*) This argument fails.

Rubin and Leru have cited no authority for the proposition that, on a motion to appoint a lead plaintiff under the PSLRA, damages must be calculated pursuant to the method contained in § 11. On the contrary, as noted above, many courts have noted that the PSLRA does not give a precise methodology for computing financial interest. *See, e.g.*, *Pirelli*, 229 F.R.D. at 404 n.15; *In re Olsten*, 3 F. Supp. 2d at 295. Moreover, even assuming *arguendo* that Tonyaz's loss was required to be calculated in such a way that his damages were limited to the price at which the security was offered to the public in the IPO ($8.28 per share), Tonyaz's loss would still be significantly greater than that of Rubin and Leru.[4]

Second, Rubin and Leru assert that, because Rubin is the only movant with standing to sue the underwriters pursuant to § 12 of the Securities Act, and the only movant who purchased shares directly in the IPO, Tonyaz is an inappropriate lead plaintiff, and Rubin and Leru should be appointed co-lead plaintiffs in this action. (*See* Rubin/Leru Opp. at 1-2.) However, as noted above, the Second Circuit has held that there is no requirement that a court select as lead plaintiff only a movant with standing to assert every possible claim against every defendant, nor does the presumptive lead plaintiff fail to satisfy the typicality prong if he or she cannot assert every possible claim. *See Hevesi*, 366 F.3d at 82-83; *see also Weinberg v. Atlas Worldwide Holdings, Inc.*, 216 F.R.D. 248, 253 (S.D.N.Y. 2003) ("The idea that there should be multiple Lead Plaintiffs with standing to sue on all possible causes of action has been rejected by the Southern District.") (citations omitted).

Rubin and Leru cite a recent Second Circuit summary order, *Levitt v. Rogers*, No. 06 Civ. 5298, 2007 WL 4460629 (2d Cir. December 18, 2007), in support of their claim that the appointment of Tonyaz as lead plaintiff will "cast a pall of uncertainty over the litigation." (Rubin/Leru Opp. at 8-9.) However, the holding in *Levitt* does not apply to the instant case.

*Levitt* involved a multi-district litigation ("MDL") relating to six different public offerings of stock and, accordingly, involving six sub-classes of plaintiffs, including a sub-class consisting of purchasers of ML Direct securities whose claims were limited to those against defendant Bear Stearns. *See Greenberg v. Bear Stearns & Co., Inc., et ano*, 80 F. Supp. 2d 65, 67 (E.D.N.Y. 2000). A group of plaintiffs called the Rogers Group was appointed to represent the entire class in the MDL because they held the largest

---

[4]Tonyaz asserts that he purchased 33,000 shares of Fuwei stock traceable to the IPO. (*See* Kim Opp. Decl. ¶ 2, Ex. 1.) Using Rubin and Leru's methodology, multiplying 33,000 shares by $8.28 per share results in a total purchase value of $273,240.00. Subtracting the current value of Tonyaz's shares, which is approximately $165,000.00 using the $5.00 held share price, Tonyaz would still have suffered a loss of approximately $108,240.00, which is significantly greater than the $77,302.10 loss allegedly incurred jointly by Rubin and Leru.

financial interest in the class as a whole. *See id.* at 67-68. A group of plaintiffs known as the Levitt Group moved several times to be appointed lead plaintiff of the ML Direct sub class *only*; however, the district court denied those requests, holding instead that the court was "of the view that the largest financial interest of the class should be considered, not the largest financial interest of separate sub classes." *Id.* at 70. The court held on several subsequent occasions that the Rogers Group was the most adequate representative of the class in the litigation. *Id.*; *see also Levitt*, 2007 WL 4460629, at *1.

Later in the litigation, when all or virtually all of the claims against Bear Stearns were dismissed *except* those of the ML Direct subclass, the Levitt Group moved again to be appointed lead plaintiff, arguing that because the majority of plaintiffs included in the Rogers Group no longer had *any* valid claims against Bear Stearns, the Rogers Group was no longer the presumptive lead plaintiff of the ML Direct subclass*. Levitt*, 2007 WL 4460629, at *1. On appeal from the district court's denial of that motion, the Second Circuit reversed, holding that the district court should have granted the motion of the Levitt Group because, given the dismissal of all or virtually all of the Rogers Group plaintiffs' claims against Bear Stearns, the Levitt Group *actually became* the group of plaintiffs in the ML Direct subclass with the largest financial interest in the case against Bear Stearns, and thus was the presumptive lead plaintiff of the ML Direct subclass. *See id.* The Court held that the rebuttable presumption thus shifted from the Rogers Group to the Levitt Group, and that the district court abused its discretion in failing to appoint a new lead plaintiff, particularly given that the litigation against Bear Stearns was in the early stages. *Id.*

The holding in *Levitt* actually supports the Court's holding here — that is, that the movant who has the largest financial interest and satisfies the requirements of Rule 23(a) at the time the motions are made is the presumptive lead plaintiff. *See id.* If at some point in this litigation, the lead plaintiff ceases to have any valid claims against the defendants (if, for example, all claims except those against the underwriters are dismissed), movants Rubin and Leru may renew their motions, consistent with *Levitt*. However, at this point, Tonyaz meets the requirements of the PSLRA and is the presumptive lead plaintiff of the class as defined in both complaints.

Third, Rubin and Leru argue that Tonyaz's purchase of shares in the "aftermarket" as opposed to through the IPO means he must rely on a "tracing" theory that is "likely subject to failure." (Rubin/Leru Reply at 2, 5-6; Rubin/Leru Opp. at 6-8.) As such, Rubin and Leru assert that Tonyaz does not have standing to assert Section 11 claims and is an improper lead plaintiff. (*Id.*) This argument too fails. At this point, a prospective lead plaintiff need only make a preliminary, *prima facie* showing that his or her claims satisfy the requirements of Rule 23. *Kaplan*, 240 F.R.D. at 94 (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)); *see also Weinberg*, 216 F.R.D. at 252-53 ("[A]wide ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for consideration of a motion for class certification.") (citations and internal quotation marks omitted); *Corwin*, 2008 WL

123846, at *2; *Pirelli*, 229 F.R.D. at 412. Tonyaz claims that he has standing to assert the Securities Act claims he alleges (*see* Tonyaz Opp. at 4), and, as discussed above, satisfies the typicality and adequacy requirements of Rule 23.  At this stage in the litigation, that is sufficient.

Finally, Rubin asserts that, at the very least, she should be appointed as a co-lead plaintiff due to her claims against the underwriters.  (Rubin/Leru Opp. at 9-10.) The Court declines to make such an appointment.  There is no presumption in the PSLRA that co-lead plaintiffs are better than one lead plaintiff, and the fact that Rubin has additional claims to assert is not a reason to name her a co-lead plaintiff.  *See Weinberg*, 216 F.R.D. at 253.  Moreover, it is undisputed that Rubin's financial interest is significantly less than that of movant Tonyaz, and that the losses allegedly sustained by Leru, a plaintiff who, like Tonyaz, has no claims against the underwriters, make up approximately 94% of the combined Rubin/Leru losses.  (*See* Kim Opp. Decl. ¶ 2, Ex. 1; Weiss Decl. ¶ 3, Ex. B.)

Accordingly, the Court concludes that the presumption in favor of Tonyaz is not rebutted, and he is the plaintiff most capable of adequately representing the interests of the class.  Mr. Tonyaz is hereby appointed lead plaintiff in this action.

### IV.  APPROVAL OF SELECTION OF LEAD COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff shall select and retain counsel to represent the class, subject to the court's approval.  *See Pirelli*, 229 F.R.D. at 420.  Lead plaintiff Tonyaz has selected The Rosen Law Firm, P.A., to represent him and seeks the Court's approval of that selection. In support of that request, Phillip Kim, Esq., of The Rosen Law Firm has submitted a declaration setting forth his firm's experiences as class counsel and attaching a resume of the firm which references over twenty securities class actions or other actions in which the firm has served as counsel or, in many cases, lead or co-lead counsel. (Kim Decl. ¶ 5 & Ex. 4.)  As such, the Rosen Law Firm is well-qualified to serve as lead counsel in this matter, and, accordingly, Mr. Tonyaz's selection of The Rosen Law Firm as his counsel is hereby approved.  *See In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 7972 (PKC), 2007 WL 4302732, at *2 (S.D.N.Y. December 6, 2007).

### IV.  CONCLUSION

For the reasons stated above, the motions to consolidate the *Yao* and *Rubin* actions are GRANTED.  Movant Tonyaz's motions for appointment as lead plaintiff and approval of selection of counsel are GRANTED.  All other motions are DENIED.  The Clerk of the Court is directed to terminate the motions docketed at Documents # 4, 5, 6, and 13.

Leave to file a consolidated amended class action complaint is granted, provided it is filed on or before February 22, 2008. Defendants' time to answer or move is extended to forty-five days after the filing of

the consolidated amended class action complaint.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: January 24, 2008
      New York, New York

* * *

Movant Nijat Tonyaz is represented in this action by Laurence Matthew Rosen, Esq., and Phillip C. Kim, Esq., The Rosen Law Firm, P.A., 350 5th Avenue, Suite 5508, New York, New York, 10118. Movants Meira Rubin and Costachi Leru are represented in this action by Joseph Harry Weiss, Esq., Weiss & Lurie, 551 Fifth Avenue, New York, New York, 10176.